IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES, | 3:00-CR-00371-BR |
| | 3:00-CR-00547-BR |
| Plaintiff, | 3:04-CR-00115-BR |
| v. | OPINION AND ORDER |
| DARRELL LYNN SNYDER, | |
| Defendant. | |

**BILLY J. WILLIAMS**
United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204
(503) 727-1000

**JEFFREY S. SWEET**
Assistant United States Attorney
405 E. Eighth Avenue
Suite 2400
Eugene, OR 97401
(541) 465-6903

        Attorneys for Plaintiff

1 - OPINION AND ORDER

**LISA C. HAY**
Federal Public Defender
**STEPHEN R. SADY**
Chief Deputy Federal Public Defender
101 S.W. Main Street
Suite 1700
Portland, OR  97201
(503) 326-2123

**BRYAN E. LESSLEY**
Assistant Federal Public Defender
859 Willamette Street
Suite 200
Eugene, OR 97401
(541) 465-6937

        Attorneys for Defendant


**BROWN, Judge.**

     This matter comes before the Court on Defendant Darrell Lynn
Snyder's Motions in 3:00-CR-00371-BR, 3:00-CR-00547-BR, and
3:04-CR-00115-BR (#81, #84, #41 respectively) to Reduce Sentence
Pursuant to 18 U.S.C. § 3582(c) and [United States Sentencing
Guideline] U.S.S.G. Amendment 782.  For the reasons that follow,
the Court **DENIES** Defendant's Motions but **GRANTS** a certificate of
appealability.


<u>**BACKGROUND**</u>

     At some point Defendant Darrell Lynn Snyder was charged in
an Indictment in Case No. 3:00-CR-00371-BR with, among other
things, Conspiracy to Import Controlled Substances in violation
of 21 U.S.C. §§ 952(a), 960(b)(1)(A), and 963.  The Indictment

2 - OPINION AND ORDER

was returned in the Southern District of Texas and transferred to this Court on July 18, 2000, pursuant to Federal Rule of Criminal Procedure 20.

On November 28, 2000, Defendant was charged in an Indictment in 3:00-CR-547-BR with Money Laundering in violation of 18 U.S.C. § 1956(a)(2)(A) and § 2; Conspiracy to Import a Controlled Substance in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(A), and 963; and Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841.

At some point Defendant also was charged in an Indictment in 3:04-CR-115-BR with Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841.  The Indictment was returned in the Eastern District of Arkansas and transferred to this Court on March 18, 2004, pursuant to Federal Rule of Criminal Procedure 20.

On April 19, 2004, Defendant entered a guilty plea in all three matters representing a global resolution of all pending and potential additional charges against Defendant.  Although the Texas Grand Jury charged Defendant in Count 1 of the Indictment in 3:00-CR-371-BR with conspiracy to import "one thousand kilograms or more" of "marihuana" and "five kilograms or more" of cocaine, the Plea Agreement provided:

> The parties stipulate and agree that for purposes
> of relevant conduct, the amount of cocaine
> involved in this offense [referring to Count 1 of
> the Indictment originally brought in Texas] is

more than one hundred and fifty kilograms which
would result in a base offense level of 38.

At Defendant's April 19, 2004, change-of-plea hearing the
Court engaged in a colloquy with Defendant regarding the relevant
conduct in these matters as follows:

> THE COURT:        Now, the quantity of drugs in a
>                   drug crime drives the base offense
>                   level for purposes of the
>                   sentencing guideline.  The
>                   guidelines determine and increase
>                   depending upon quantities.  You
>                   understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:        And have you tried with Mr. Warren
>                   to go through the sentencing stage
>                   and table and tried to get an idea
>                   of what kind of exposure you might
>                   be facing?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:        I'm not -- I'll come back to that
>                   in just a few minutes, because
>                   paragraph 2 of your plea agreement
>                   is captioned "Relevant Conduct",
>                   and that's an important concept for
>                   you to keep in mind.  The
>                   guidelines require me to hold you
>                   accountable for all of your conduct
>                   that is relevant to the offense of
>                   conviction, not just the literal
>                   words charged in the indictment.
>                   So if a person pled guilty, for
>                   example, simply to possessing with
>                   intent to distribute cocaine but
>                   the facts showed, established to
>                   the proper degree of certainty that
>                   the person was responsible for a
>                   very large quantity of cocaine as
>                   opposed to a small quantity, the
>                   court could rely upon that kind of
>                   evidence and consider as relevant

conduct all of the drugs the person possessed with intent to distribute, not just what might have been possessed on a particular day of an arrest charged in an indictment.

So, one, I'm required to look beyond the literal words of the indictment to all of your relevant conduct, and if there wasn't an agreement but there is, as laid out here as to quantity, I would have to make a finding about those quantities in order to place you properly on the guideline table. Understand?

THE DEFENDANT: Yes, ma'am.

THE COURT:    So in the relevant conduct paragraph, it's indicated that you all agree for purposes of relevant conduct the cocaine involved in the Texas case is more than 150 kilograms, which would result in a base offense level of 38. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT:    By agreeing to this quantity, Mr. Snyder, you're bound by it. That means tomorrow or the next day or at sentencing, you cannot make an argument that says you're accountable for less than 150 kilograms of cocaine. You're signing off on this, you're agreeing to it. A deal's a deal. All of it goes together. This is something you are signing off on and will be bound by. Do you understand?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

* * *

THE COURT:        All right.  And the prosecutor goes on to write in this letter, they have information that in fact you should be held responsible for 5,000 kilograms, but the Government is agreeing not to seek any upward departure in base offense level upon -- based upon this extraordinarily high quantity as otherwise would be permitted, so the Government is agreeing not to ask for an upward adjustment. Clear?

THE DEFENDANT: Yes, ma'am.

THE COURT:        Now, let's talk about another important point.  Just because the Government agrees not to seek that upward adjustment does not mean that I won't conclude it is warranted.  The judge's role in this process is not just to rubber stamp a deal and go on and apply a sentence based upon the deal.  A judge has to make an independent determination about what a person's accountable for and what the fair sentence should be.  I'm not telling you I'm going to depart upward.

THE DEFENDANT: I understand.

THE COURT:        I'm warning you that in every case a person pleading guilty on a plea agreement with the Government can only fix so much.  You can only agree to so much, and that's between you all, but a judge still has to make an independent assessment.  And ultimately if the sentence I impose in your case turns out to be different from what you had hoped for, or even what the Government agreed to recommend, you're still bound by your guilty plea.  Do you understand?

THE DEFENDANT: Yes, ma'am.

April 19, 2004, Change of Plea Tr. (#98) at 30-33.

The August 9, 2004, Presentence Report (PSR) noted in the

Relevant Conduct section:

> In his role in this drug conspiracy, defendant
> recruited and managed three trust drivers who
> transported multi-ton loads of drugs from the
> Mexican border to warehouses inside Texas. . . .
> Drug seizures in this case attributable
> to-defendant are 1,044 kilograms of cocaine
> (Walter - Mace load in April 1996) and 24
> kilograms of cocaine (traffic stop in Arkansas in
> December 2002), for a total of **1,068 kilograms of
> cocaine**. However, the investigation in the
> Southern District of Texas conservatively
> estimates Snyder's relevant conduct would exceed
> 5,000 kilograms of cocaine based on his management
> of the three truck drivers who transported
> multiple loads within the state of Texas.

PSR ¶ 35 (emphasis in original).  Similarly, the PSR noted in the

Offense Level Computation section:

> **Base Offense Level:** . . . For purposes of relevant
> conduct, defendant is accountable for the drugs
> seized in April 1996 from the driver he managed as
> well as the drugs seized from defendant's pickup
> in December 2002 in Arkansas.  These quantities
> total 1,068 kilograms of cocaine, although the
> investigation conservatively estimates defendant
> is responsible for in excess of 5,000 kilograms of
> cocaine.  Therefore, pursuant to Guideline
> § 2Dl.l(a)(3)(1), the base offense level is 38.
>
> * * *
>
> **Adjustment for Role in the Offense:** During
> defendant's involvement in the instant offense, he
> recruited and/or managed 3 truck drivers as they
> transported multi-ton loads of drugs from the
> Mexican border to warehouses inside Texas.
> Guideline§ 3Bl.l© calls for a 2-level enhancement
> if defendant was an organizer, leader, manager, or

7 - OPINION AND ORDER

> supervisor in any criminal activity.  In the plea
> agreement, defendant acknowledges and agrees that
> this 2-level enhancement is appropriate based on
> his role in the offense.

PSR ¶¶ 40, 42.  The PSR recommended a two-level increase to the

Base Offense Level to account for Defendant's managerial role and

an additional two-level increase pursuant to Defendant's Plea

Agreements and U.S.S.G. § 3C1.1 for absconding supervision after

Defendant's initial arrest and for committing the Arkansas drug

crime during the period that he was on abscond status.  The PSR

also recommended a three-level reduction for Defendant's

acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and an

additional one-level reduction "based on the savings of judicial

and governmental resources represented by a global settlement of

these charges frm three different judicial districts."  The PSR

ultimately concluded Defendant's sentencing range was 235-293

months.  The parties jointly recommended a sentence of 235

months.

At Defendant's September 1, 2004, sentencing hearing the

Court engaged in the following discussion with Defendant:

> THE COURT:    I think, before I ask for your
> formal recommendation for the
> record, Ms. Baker, I would like to
> speak with Mr. Snyder and
> Mr. Warren to confirm Mr. Snyder's
> intention to stand by the plea
> agreement and to confirm, or not,
> the facts that were accepted as
> part of that plea agreement.

* * *

8 - OPINION AND ORDER

THE COURT:        Mr. Snyder, do you know what this
                  issue is about that I'm referring
                  to?

THE DEFENDANT: Yes.

THE COURT:        In the course of preparing for
                  sentencing, Mr. Warren wrote a
                  series of letters on your behalf.
                  And one of the letters suggested
                  that you might dispute a fact that
                  appeared to have been already
                  resolved as part of your plea
                  agreement.

                  The prosecutor then alerted
                  Mr. Warren that if you were going
                  to seek to withdraw from the plea
                  agreement, or make these assertions
                  at least, the Government would
                  conclude you were in breach of the
                  plea agreement, which would relieve
                  the Government from its
                  obligations, but would still hold
                  you bound to your guilty pleas.

                  Do you know about that letter?

THE DEFENDANT: Yes.

THE COURT:        Have you talked to Mr. Warren about
                  what your intentions are on this
                  subject?

THE DEFENDANT: Yes, ma'am.

THE COURT:        Are you able to tell me what that
                  is?  Do you stand by your plea
                  agreement?

                           * * *

THE DEFENDANT: I stand by it.

September 1, 2004, Sentencing Tr. (#54) at 2-4.  The Court

advised Defendant in relevant part:  "I'm adopting the joint

recommendations that you have made.  The 235-month sentence is imposed on each of the three counts, to run concurrently. . . . The guidelines analysis that has been set out in the [PSR] is adopted." Sentencing Tr. (#54) at 16.  Specifically, the Court found Defendant's Total Offense Level to be 38 with a criminal history category of I resulting in a guideline range of 262-327 months.  The Court granted Defendant a one-level downward departure based on conservation of judicial and governmental resources in the global settlement, which reduced Defendant's Total Offense Level to 38 for a guideline range of 235-293 months.  The Court sentenced Defendant to the low-end of the applicable guideline range (*i.e.*, 235 months incarceration in each of the cases to be served concurrently) followed by a five-year term of supervised release.

On September 3, 2004, the Court entered a Judgment sentencing Defendant to a 235-month term of imprisonment to be followed by five years of supervised release.

On September 10, 2004, the Court entered a Findings of Fact Order in each case in which the Court stated:  "No specific objections or legal disputes were raised concerning the statements and conclusions contained in the PSR.  The Court finds all uncontroverted facts contained in the Presentence Report to be true and accurate."  Gov't Notice of Supp'l Materials, Ex. 2 at ¶¶ 3.  The Court also stated:  "Other than those paragraphs

10 - OPINION AND ORDER

previously amended, clarified, adjusted, or on which no finding was necessary, the Court adopts the Presentence Report . . . as its own findings and conclusions." *Id*. at ¶ 5.

Effective November 1, 2014, the United States Sentencing Commission adopted Amendment 782, which modified U.S.S.G. § 2D1.1 to lower the sentencing range for certain categories of drug-related offenses. The Sentencing Commission also adopted Amendment 788 effective November 1, 2014, which authorized retroactive application of Amendment 782 to defendants who were sentenced before its effective date.

On June 12, 2015, Defendant filed Motions to Reduce Sentence based on Amendment 782. The Court heard oral argument on Defendant's Motions on December 22, 2015, and took the matter under advisement that day.

## DISCUSSION

Pursuant to Amendment 782 Defendant seeks a two-level reduction in his sentence to 188 months. The government, however, asserts Defendant's applicable guideline range is not affected by Amendment 782. In the alternative, the government asserts even if Defendant's guideline range is affected by Amendment 782, he would be eligible for, at most, a one-level reduction. According to the government, any further reduction of Defendant's sentence would violate the policy set out in U.S.S.G.

§ 1B1.10(b)(2)(A) and would exceed the Court's authority to modify a sentence under 18 U.S.C. § 3582©.

Nevertheless, Defendant argues his applicable guideline is affected by Amendment 782.  In addition, Defendant asserts he is entitled to more than a one-level reduction in his sentence notwithstanding § 1B1.10(b)(2)(A) because application of § 1B1.10(b)(2)(A) to his sentence would (1) create an "irreconcilable conflict" with 8 U.S.C. § 991, the implementing regulation; (2) violate the Equal Protection Clause; and (3) violate the Due Process Clause.  Defendant also asserts the doctrine of constitutional avoidance requires the Court to interpret § 1B1.10 to avoid constitutional concerns.

I.   **Sentence Modification Authority**

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'"  *Dillon v. United States*, 560 U.S. 817, 819 (2010)(quoting 18 U.S.C. § 3582©).  "Congress has provided an exception to that rule 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'"  *Dillon*, 560 U.S. at 819 (quoting § 3582(c)(2)).

As noted, effective November 1, 2014, the Sentencing Commission modified § 2D1.1 to lower the sentencing range for certain categories of drug-related offenses, and the Commission

12 - OPINION AND ORDER

authorized retroactive application of Amendment 782 to defendants who were sentenced before its effective date.

When the Sentencing Commission lowers a sentencing range as it did with Amendment 782, 18 U.S.C. § 3582(c)(2) authorizes a court to reduce a defendant's term of imprisonment only after the court finds such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  The court must then determine whether the sentence should be reduced based on factors set out in 18 U.S.C. § 3553(a).  *Dillon*, 560 U.S. at 826.

The Sentencing Commission policy statement at issue here is U.S.S.G. § 1B1.10, which provides in pertinent part:

> (b)  Determination of Reduction in Term of Imprisonment.--
>
>> (1)  In General.--In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced.  In making such determination, the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.
>
>> (2)  Limitation and Prohibition on Extent of Reduction.--
>
>>> (A) Limitation.-- . . . the court shall not reduce the defendant's term of imprisonment . . . to a term that is

13 - OPINION AND ORDER

> *less than the minimum of the amended*
> *guideline range* determined under
> subdivision (1) of this subsection.
>
> (B)  Exception for Substantial
> Assistance.--If the term of imprisonment
> imposed was less than the term of
> imprisonment provided by the guideline
> range applicable to the defendant at the
> time of sentencing pursuant to a
> government motion to reflect the
> defendant's substantial assistance to
> authorities, a reduction comparably less
> than the amended guideline range
> determined under subdivision (1) of this
> subsection may be appropriate.

Emphasis added.  Application Note 1(A) explains in pertinent

part:

> Eligibility for consideration under 18 U.S.C.
> 3582(c)(2) is triggered only by an amendment
> listed in subsection (d) that lowers the
> applicable guideline range (*i.e.*, the guideline
> range that corresponds to the offense level and
> criminal history category determined pursuant to
> 1B1.1(a), which is determined before consideration
> of any departure provision in the Guidelines
> Manual or any variance).  Accordingly, a reduction
> in the defendant's term of imprisonment is not
> authorized under 18 U.S.C. 3582(c)(2) and is not
> consistent with this policy statement if: . . .
> (ii) an amendment listed in subsection (d)
> is applicable to the defendant but the amendment does
> not have the effect of lowering the defendant's
> applicable guideline range.

## II.  **Amendment 782 does not affect Defendant's sentence.**

As noted, the government asserts Amendment 782 does not

affect Defendant's sentence.  Although Amendment 782 reduced most

offense levels on the § 2D1.1 Drug Quantity Table by two levels,

offense levels remained the same for certain large quantities of

14 - OPINION AND ORDER

controlled substances.  Even after Amendment 782, relevant conduct involving 450 kilograms or more of cocaine is still at a Total Offense Level of 38.  *See* U.S.S.G. § 2D1.1(c)(1).

As noted, § 1B1.10 makes clear that a sentencing court is not authorized to reduce a defendant's sentence when a retroactive amendment does not result in lowering the applicable Guidelines range for the defendant.

The government asserts the Court in its September 9, 2004, Findings of Fact adopted the PSR and its findings, one of which was that Defendant was responsible for 1,068 kilograms of cocaine.  According to the government, therefore, the Court already has found Defendant's relevant conduct involved more than 450 kilograms cocaine, and, as a result, Amendment 782 does not reduce Defendant's Base Offense Level on the § 2D1.1 Drug Quantity Table.  Thus, Amendment 782 does not result in lowering the applicable Guidelines range for Defendant.

Defendant, in turn, asserts the Court did not adopt the fact in the PSR that Defendant was responsible for 1,068 kilograms of cocaine at Defendant's change-of-plea hearing or in its Findings of Fact Order because a finding by the Court of any amount of cocaine greater than 150 kilograms was not required due to the agreement reached by the parties the Plea Agreement. Specifically, Defendant points to the fact that the Plea Agreement reflected:

15 - OPINION AND ORDER

> The parties stipulate and agree that for purposes
> of relevant conduct, the amount of cocaine
> involved in this offense [referring to Count 1 of
> the Indictment originally brought in Texas] is
> more than one hundred and fifty kilograms which
> would result in a base offense level of 38.

Defendant notes the Plea Agreement did not mention the 1,068

kilograms of cocaine.  Defendant also relies on the Court's

statements with respect to relevant conduct at the

April 19, 2004, change-of-plea hearing:

> THE COURT:    So if a person pled guilty, for example,
> simply to possessing with intent to
> distribute cocaine but the facts showed,
> established to the proper degree of
> certainty that the person was
> responsible for a very large quantity of
> cocaine as opposed to a small quantity,
> the court could rely upon that kind of
> evidence and consider as relevant
> conduct all of the drugs the person
> possessed with intent to distribute, not
> just what might have been possessed on a
> particular day of an arrest charged in
> an indictment.
>
> So, one, I'm required to look beyond the
> literal words of the indictment to all
> of your relevant conduct, and if there
> wasn't an agreement but there is, as
> laid out here as to quantity, I would
> have to make a finding about those
> quantities in order to place you
> properly on the guideline table.
> Understand?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:    So in the relevant conduct paragraph,
> it's indicated that you all agree for
> purposes of relevant conduct the cocaine
> involved in the Texas case is more than
> 150 kilograms, which would result in a
> base offense level of 38.

16 - OPINION AND ORDER

Defendant contends this exchange indicates the Court did not make any finding as to quantity other than that it was more than 150 kilograms resulting in a Base Offense Level of 38.

The government, on the other hand, notes at Defendant's September 1, 2004, sentencing the Court specifically stated "[t]he guidelines analysis that has been set out in the presentence report is adopted." Sentencing Tr. (#54) at 16. In addition, in the Court's September 9, 2004, Findings of Fact the Court stated "the Court adopts the Presentence Report . . . as its own findings and conclusions." As noted, the PSR included in the Relevant Conduct section:

> Drug seizures in this case attributable to defendant are 1,044 kilograms of cocaine (Walter - Mace load in April 1996) and 24 kilograms of cocaine (traffic stop in Arkansas in December 2002), for a total of **1,068 kilograms of cocaine**. However, the investigation in the Southern District of Texas conservatively estimates Snyder's relevant conduct would exceed 5,000 kilograms of cocaine based on his management of the three truck drivers who transported multiple loads within the state of Texas.

Emphasis in original. According to the government, therefore, the Court adopted all of the findings of the PSR including the total of 1,068 kilograms of cocaine as relevant conduct.

In addition, the government notes the Court reviewed at sentencing the fact that defense counsel, Mr. Warren, wrote a series of letters on behalf of Defendant, one of which suggested Defendant might dispute the drug quantities set out in the PSR.

17 - OPINION AND ORDER

At sentencing, however, Defendant specifically stated he did not dispute any of the findings in the PSR.  In addition, the record does not reflect any objections to the PSR by Defendant as to the drug quantity or relevant conduct.

At the December 22, 2015, oral argument the Court noted there was not any objection at the time of sentencing to any of the PSR's proposed findings, including as to drug quantities; made clear that it had adopted at Defendant's sentencing all of the PSR findings, including as to drug quantities; and pointed out that it reiterated its adoption of those findings in its September 9, 2004, Findings of Fact Order.  The Court also noted at oral argument that although Defendant wrote the Court a series of letters before sentencing, Defendant specifically stated at sentencing that he was not challenging or objecting to any part of the PSR.

Based on this record and as stated on the record at oral argument, the Court concludes Amendment 782 does not apply to Defendant and does not provide a basis for a reduction in Defendant's sentence.

**III. Challenges to Amendment 782.**

Even if the Court concluded Amendment 782 applies to Defendant's sentence, the Court concludes any further reduction of Defendant's sentence would violate the policy set out in U.S.S.G. § 1B1.10(b)(2)(A) and would exceed the Court's authority

18 - OPINION AND ORDER

to modify a sentence under 18 U.S.C. § 3582(c).

As noted, Defendant asserts he is entitled to a two-level reduction if Amendment 782 applies to his sentence notwithstanding § 1B1.10(b)(2)(A) because application of § 1B1.10(b)(2)(A) to his sentence would (1) create an "irreconcilable conflict" with 8 U.S.C. § 991, the implementing regulation; (2) violate the Equal Protection Clause; and (3) would violate the Due Process Clause. Defendant also asserts the doctrine of constitutional avoidance requires the Court to interpret § 1B1.10 to avoid constitutional concerns.

**A.   Departures and variances are not "guideline application decisions" and are not included in the "amended guideline range."**

As noted, when the court considers a sentence modification pursuant to a retroactive change in the Sentencing Guidelines, § 1B1.10(b)(1) provides the changed provision is incorporated and "all other guideline application decisions" must remain unaffected. Defendant asserts variances and departures are "guideline application decisions" and, therefore, must remain unaffected. Thus, according to Defendant, variances and noncooperation departures should be included in calculating the "amended guideline range."

For the reasons stated on the record at oral argument and set out by this Court in *United States v. Castaneda*, 3:11-CR-00412-BR and by Judge Michael Simon in *United States v.*

19 - OPINION AND ORDER

*Gorgatenko*, 3:10-CR-00396-SI, the Court concludes the terms
"guideline application decision" and "amended guideline range"
are not ambiguous with respect to the inclusion of departures and
variances when the Court considers the text of § 1B1.10, its
application notes, the text of the previous version of § 1B1.10,
and applicable case law.  Considering these sources together, the
Court concludes § 1B1.10 unambiguously does not include
departures and variances in the amended guideline range.

    **B.    Application of § 1B1.10(b)(2)(A) does not violate the
implementing regulation.**

        Defendant asserts application of § 1B1.10(b)(2)(A)
under the circumstances of his case would create an
"irreconcilable conflict" with 28 U.S.C. § 991(b), the
implementing regulation, if the Court concludes § 1B1.10 does not
include departures and variances.  Specifically, § 991(b)
mandates in pertinent part that one of the purposes of the United
States Sentencing Commission is to avoid "unwarranted sentencing
disparities among defendants with similar records who have been
found guilty of similar criminal conduct."  28 U.S.C.
§ 991(b)(1)(B).  Defendant asserts an interpretation of § 1B1.10
that permits courts to grant sentence reductions to people who
did not receive variances and noncooperation departures and
requires courts to deny reductions to people who received such
variances and departures would nullify the sentencing
determinations previously made by the sentencing court and create

20 - OPINION AND ORDER

unwarranted disparities.

        For the reasons set out by the Court at oral argument
and in *Castaneda*; explained by Judge Simon in *Gorgatenko*; and
also explained by the court in *United States v. Rodriguez*,
No. 12cr1121-LAB, 2015 WL 4235363 (S.D. Cal. July 8, 2015), this
Court concludes the limitation in § 1B1.10(b)(2)(A) that
precludes consideration of variances and noncooperation
departures in the context of a sentence modification under 18
U.S.C. § 3582(c) does not conflict with 18 U.S.C. § 991(b).

## C.    Application of § 1B1.10(b)(2)(A) does not violate the Equal Protection Clause.

        To the extent that the Court concludes § 1B1.10(b)(2)
prohibits courts from reducing sentences based on
previously-imposed variances and noncooperation departures,
Defendant also asserts application of § 1B1.10(b)(2)(A) to
Defendant's case violates his right to equal protection.

### 1.    The rational-basis test applies.

        "'The liberty protected by the Fifth Amendment's
Due Process Clause contains within it the prohibition against
denying to any person the equal protection of the laws.'"  *Novak
v. United States*, 795 F.3d 1012, 1023 (9th Cir. 2015)(quoting
*United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013)).

        Defendant, however, does not assert he is a member
of a suspect class.  In addition, Defendant cannot establish he

is being deprived of a fundamental right because a defendant does not have a constitutional right to a sentence reduction based on subsequent guideline amendments.  *See Dillon*, 560 U.S. at 827-28 (§ 3582 is a "narrow exception to the rule of finality," and sentencing modification proceedings under that statute "are not constitutionally compelled.").  The Court, therefore, concludes Defendant's equal-protection challenge to § 1B1.10(b) is subject to a rational-basis review.  *See, e.g., United States v. Johnson*, 626 F.3d 1085, 1088 (9th Cir. 2010)("We apply the rational basis standard of review to Equal Protection challenges to the Sentencing Guidelines based on a comparison of allegedly disparate sentences.").

Under rational-basis review the challenged classification "must be upheld against equal protection challenge 'if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification.'"  *United States v. Ellsworth*, 456 F.3d 1146, 1150 (9th Cir. 2006)(quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)(emphasis in *Ellsworth*)).  "A classification . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012).  "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which

22 - OPINION AND ORDER

might support it." *Id.* (quotations omitted).

    **2.  Analysis**

For the reasons set out by the Court at oral argument; explained by the Court in *Castaneda*; and set out by Judge Simon in *Gorgatenko*; Judge Owen Panner in *United States v. Garcia-Uribe,* 08-CR-30039-PA; Judge Michael Mosman in *United States v. Heckman*, 10-CR-143-MO, and *United States v. Padilla-Diaz*, 08-CR-126-MO; and Chief Judge Ann Aiken in *United States v. Mahan*, 06-CR-60045-AA, the Court concludes the government has established there is a rational relationship between the disparity of treatment of defendants in § 1B1.10 and a legitimate governmental purpose.  Specifically, the Sentencing Commission found the distinction between departures and variances was "'difficult to apply' and 'prompted litigation.'"  *United States v. Gonzalez*, No. 10CR1009- LAB 2015 WL 4760286, at *1 n.1 (S.D. Cal. Aug. 11, 2015)(quoting Notice of Final Action Regarding Amendment to Policy Statement 181.10, 76 Fed. Reg. 41332, 41332, 41334 (July 13, 2011)).  The Commission was also "concerned that retroactively amending the guidelines could result in a windfall for defendants who had already received a departure or variance, especially one that took into account the disparity in treatment between powder and crack cocaine." *Davis*, 739 F.3d at 1225.  Defendant has not negated "every conceivable basis which might support" the Commission's decision prohibiting reductions below

23 - OPINION AND ORDER

the amended guidelines range except in the case of substantial assistance nor has Defendant established there is not "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Ellsworth*, 456 F.3d at 1150.  As the Supreme Court has noted "'equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'  [When] rational basis review applies and 'there are plausible reasons for Congress' action, our inquiry is at an end.'"  *Novak v. United States*, 795 F.3d 1012, 1023 (9th Cir. 2015)(quoting *FCC*, 508 U.S. at 313-14).

Accordingly, the Court concludes application of § 1B1.10(b)(2)(A) to Defendant does not violate his right to equal protection.

### D. Application of § 1B1.10(b)(2)(A) does not violate due process.

Finally Defendant asserts application of § 1B1.10(b) to his sentence would violate his right to due process because a later-enacted law cannot disrupt a defendant's settled expectation of eligibility for a discretionary benefit that induced the defendant's guilty plea.  Specifically, Defendant notes the version of § 1B1.10(b)(2) in effect when he pled guilty permitted him to receive a sentence reduction that included the one-level departure.  U.S.S.G. § 1B1.10 (2004).  The Plea Agreement also reserved Defendant's right to seek a reduction in his sentence on the ground of any retroactive

24 - OPINION AND ORDER

changes in the sentencing guidelines.  *See* PSR at ¶12 (retaining the right to file a motion "on grounds of . . . retroactive changes in the applicable guidelines or statutes").  Defendant asserts "[b]ecause the version [of] U.S.S.G. § 1B1.10 in effect at the time of the agreement would have allowed retroactive reductions to include the agreed departure, [he] reasonably expected that he could maintain the departure when seeking the benefit of retroactive amendments."  According to Defendant, "[a]pplying the version of § 1B1.10(b)(2) enacted seven years after his plea to preclude the departure from inclusion in calculation of the amended guideline range would disrupt Defendant's reasonable expectations about the plea and violate due process."

Defendant asserts *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), established that a later-enacted law cannot be applied to deprive a defendant of the settled expectations that induced his plea, including expected eligibility for discretionary benefits. Defendant asserts he had a settled expectation of inclusion of his downward departures in any amended guideline-range calculation as reflected by the provision in the Plea Agreement that

> [t]he parties will jointly recommend defendant receive a 1-level downward departure based upon the savings of judicial and government resources . . . .  The government agrees not to seek any upward departures or adjustments except as specified in this agreement.  Other than the

25 – OPINION AND ORDER

> downward departure already described, defendant
> agrees not to seek any further downward departures
> or adjustments, except as specified in this
> agreement.

Plea Agreement at ¶ 10.  Defendant asserts the Plea Agreement

also "expressly contemplated" he would be able to take advantage

of future retroactive amendments to the guidelines as follows:

"Defendant . . . waives his right to file a motion, pursuant to

28 USC § 2255, to set aside the conviction and sentence, except

on grounds of . . . retroactive changes in the applicable

guidelines."  Plea Agreement at ¶ 12.  Defendant contends

"[b]ecause the version [of] U.S.S.G. § 1B1.10 in effect at the

time of the agreement would have allowed retroactive reductions

to include the agreed departure, [the defendant] reasonably

expected that he could maintain the departure when seeking the

benefit of retroactive amendments."

        Judge Mosman rejected this same argument in *Heckman* and

*Padilla-Diaz*:

> Defendant offers *St. Cyr* to suggest that finding
> Amendment 782 to be inapplicable is equivalent to
> retroactively depriving him of a "settled
> expectation" of a potential benefit.  *I.N.S. v.
> St. Cyr*, 533 U.S. 289 (2001).  Any such
> deprivation, Defendant argues, violates the Due
> Process Clause.  Here, that argument is unavailing
> because Defendant did not have a settled
> expectation.  In *St. Cyr*, at the time he pled
> guilty, the defendant had the statutory right to
> apply for an immigration waiver.  While he may or
> may not have received it, his right to apply for
> it was settled.  *Id*. at 293.  Thus for St. Cyr,
> there existed only minimal uncertainty.  Here,
> however, the Defendant's expectation rests on

26 – OPINION AND ORDER

1) a future amendment being proposed 2) and passed
3) for which he was eligible 4) that he may have
applied for and 5) through which he may have
received relief.  As such, it is far less settled
than that of *St. Cyr*.  And given the history of
retroactivity under prior amendments, nothing
about Defendant's future prospects for
retroactivity was clear.

Furthermore, Defendant has not offered any
evidence to show that his "settled" expectation
was more than tenuous.  The language in
Defendant's plea agreement refers only to 18
U.S.C. §3582(c), not to any contemplated
amendments or future benefits.  The language does
not suggest that Defendant had this particular
amendment's benefits in mind, unlike the
petitioner in *St. Cyr*.  Indeed, since Amendment
782 was not passed until several years after
Defendant's plea agreement, it would be impossible
for him to have any expectation of this benefit.
In short, while St. Cyr's expectation was settled,
Defendant's expectation was not and thus his
analogy to *St. Cyr* is unpersuasive.

*Padilla-Diaz*, 08-CR-126-MO, Opin. and Order (#322) at 3; *Heckman*,

10-CR-143-MO, Opin. and Order (#48) at 3.

Although Defendant asserts here that he "was promised

. . . he would have the right to seek sentence reductions should

the guidelines applicable to him be amended retroactively," there

is not any indication in the Plea Agreement that he was

guaranteed eligibility for a sentence reduction due to a

guideline modification.  The Plea Agreement only reflected he

could "seek" such a reduction (*i.e.*, any motion for reduction of

sentence based on an amendment to the guidelines would not be

challenged as barred by the Plea Agreement).

In addition, the Supreme Court made clear in *Dillon*

27 – OPINION AND ORDER

that there is not a "constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines adjustments."  560 U.S. at 828.  As noted, the authority to reduce an otherwise final sentence found in § 3582(c) "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines."  *Id*. Congress expressly limited the scope of that lenity by directing the Commission to adopt a policy statement that "shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u).  The Commission did so by deciding only variances/departures for substantial assistance may be included in the calculation of amended sentences under Amendment 782.

Accordingly, on this record the Court concludes Defendant has not established he had any reasonable subjective expectation of a guaranteed future benefit of any Guideline amendment, and application of § 1B1.10(b) to Defendant does not violate due process.

### E.   Constitutional Avoidance.

Finally, Defendant asserts the Court does not need to resolve Defendant's equal-protection or due-process challenges if it instead applies the doctrine of constitutional avoidance. Defendant asserts he has raised "serious questions" regarding the

constitutionality of interpreting § 1B1.10 to prohibit consideration of variances and noncooperation departures and contends the Court should interpret the policy statement in a manner that avoids these constitutional questions. Specifically, Defendant asserts under the doctrine of constitutional avoidance the Court should interpret "amended guidelines range" to include previously-imposed variances and departures. The Court, however, has not found there is a constitutional violation nor under rational-basis review that there are serious questions regarding the constitutionality of § 1B1.10 as to it prohibiting consideration of variances and noncooperation departures. The Court, therefore, declines to apply the doctrine of constitutional avoidance.

**IV. Exercise of the Court's Discretion.**

Even if Defendant's arguments had merit as to the application of Amendment 782 to Defendant's sentence; construction of § 1B1.10; conflict with the implementing regulation, § 991; and/or the constitutionality of the application of § 1B1.10 to his case, in the exercise of its discretion to modify Defendant's sentence, the Court would decline to do so under these circumstances. On the totality of the record before it, the Court concludes any additional downward variance of Defendant's sentence is not warranted and that the originally imposed sentence remains "sufficient . . . but not

greater than necessary" to accomplish all of the purposes of 18
U.S.C. § 3553(a).    Accordingly, in the exercise of its
discretion, the Court declines to reduce Defendant's sentence.

**V.    Certificate of Appealability**

Because the legal issues raised in Defendant's Motion are
not clearly established and because Defendant's arguments have
the possibility of reasonable disagreement, the Court grants
Defendant a certificate of appealability.


<u>CONCLUSION</u>

For these reasons, the Court **DENIES** Defendant's Motions in
3:00-CR-00371-BR, 3:00-CR-00547-BR, and 3:04-CR-00115-BR (#81,
#84, #41 respectively) to Reduce Sentence Pursuant to 18 U.S.C.
§ 3582(c) and [United States Sentencing Guideline] U.S.S.G.
Amendment 782 and **GRANTS** Defendant a certificate of
appealability.

IT IS SO ORDERED.

DATED this 19th day of January, 2016.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge